**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RODNEY L. PETTY** | : | **CIVIL ACTION** |
| *Petitioner* | : | |
| | : | **NO. 14-4578** |
| **v.** | : | |
| | : | |
| **JOHN C. THOMAS,** *et al.* | : | |
| *Respondents* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    APRIL 24, 2017

# MEMORANDUM OPINION

## INTRODUCTION

Petitioner Rodney L. Petty ("Petitioner" or "Petty"), a Pennsylvania state prisoner, filed a counseled corrected amended petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, in which he essentially asserts claims of actual innocence, ineffectiveness of counsel at each stage of the state court proceedings, and violations of his due process rights caused by prosecutorial misconduct. [ECF18, 20-1].[1]  On August 12, 2015, in accordance with 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 72.1.IV(c), the *habeas corpus* petition was referred to United States Magistrate Judge Marilyn Heffley for a *Report and Recommendation* ("R&R").  [ECF 5]. On January 20, 2016, Magistrate Judge Heffley issued the R&R, in which she recommended that the amended petition for a writ of *habeas corpus* be denied.  [ECF 35].  Petitioner filed timely objections to the R&R, [ECF 36], and Respondents filed timely responses to the objections.

---

[1]      On August 1, 2014, Petitioner filed a *pro se* petition for a writ of *habeas corpus*. [ECF 1].  On August 7, 2014, the Federal Community Defender Office was appointed to represent Petitioner.  [ECF 3]. Following the granting of numerous extensions to file an amended petition, on February 3, 2015, the counseled amended petition for a writ of *habeas corpus* was filed on behalf of Petitioner [ECF 18].  On March 11, 2015, Petitioner filed a "Corrected Amended Petition," [ECF 20-1], that is identical to the amended petition with some minor corrections.  It is this Corrected Amended Petition that was considered by the Magistrate Judge in the *Report and Recommendation*, and which is referred to as the "petition" in this Memorandum Opinion.

[ECF 38]. This matter is ripe for a *de novo* determination of the objected to portions of the R&R.

After a thorough review of the state court record, the *habeas corpus* petition, the appendix to the amended *habeas corpus* petition, [ECF 19], the R&R, Petitioner's specific objections, and Respondents' response thereto, for the reasons set forth herein, Petitioner's objections are overruled, the R&R is approved and adopted, and the petition for a writ of *habeas corpus* is denied.

**BACKGROUND**

Petitioner argues that he was wrongfully convicted of robbery and related charges. Because the R&R provides a thorough recitation of the facts in this matter, this Court will only highlight facts relevant to Petitioner's objections; *to wit*:

> On November 9, 2006, Petitioner was convicted by a Philadelphia Court of Common Pleas jury of robbery, conspiracy, carrying a firearm without a license, possession of an instrument of crime and terroristic threats. The jury relied on the following summarized evidence to convict Petitioner:
>
>> Tekle Ukubea ("Ukubea") owned an auto body repair business in West Philadelphia, Pennsylvania. At trial, he testified that on March 14, 2005, two men he had never seen before but who were later identified as Johnnie Woodward ("Woodward") and [Petty], walked into his shop. Ukubea further testified that Woodward produced a business card, demanded $4,000, and stated he would take cash or a check. Ukubea responded that he did not have the money, and backed up and put his hand on his phone. [Petty] approached him with a gun while Woodward stood at the front door and held the knob. [Petty]'s demand of $4,000 was reduced to $2,000. When Ukubea protested, [Petty] grabbed him from behind, pushed him to the wall and started yelling. [Petty] yanked the phone line out of the wall, smashed a computer and other equipment, and struck Ukubea with the gun several times. [Petty] stopped when two customers appeared outside the shop. As he left with Woodward, he threatened to kill Ukubea and burn his shop.

Ukubea called the police and gave them a description of the perpetrators. The police instructed him to call them if he saw either of them again. On March 30, 2005, Ukubea saw a man outside his shop that he recognized as [Petty]. [Petty] entered the office area of the shop with a large menacing looking dog. Ukubea's eight year old daughter started to cry with fright. When Ukubea told [Petty] to take the dog outside, [Petty] threatened to make the dog bite Ukubea in the face. Ukubea managed to called the police who responded promptly and arrested [Petty] at the scene.[2]

At trial, Petitioner's counsel, Michael Caudo, Esquire, ("Caudo"), attempted to present a mistaken identity defense and offered, *inter alia,* evidence to suggest that Ukubea misidentified Petitioner; that Petitioner did not fit Ukubea's description of the man who assaulted him on March 14, 2005, because the assailant had a ponytail and Petitioner did not have a ponytail; and testimony from Petitioner's co-defendant that the person with him when he visited the shop was a man named Steve DeMarco ("DeMarco"), and not Petitioner.

Procedurally, following Petitioner's conviction, Caudo withdrew as trial counsel and Robert Keller, Esquire ("Keller"), entered his appearance on behalf of Petitioner. Keller filed a post-trial motion for extraordinary relief and a post-sentencing motion on behalf of Petitioner.[3] Both motions were ultimately denied. Thereafter, Keller filed a timely appeal with the Superior Court of Pennsylvania. On May 2, 2011, the Superior Court denied the appeal. On September 12, 2011, the Pennsylvania Supreme Court denied Petitioner's petition for allowance of appeal. On October 25, 2011, Keller filed a petition for relief under the Pennsylvania Post-Conviction Relief Act, 42 Pa. Const. Stat. Ann. § 9524, *et. seq.*, ("PCRA"). Following an evidentiary hearing on the PCRA petition, wherein Keller sought to have, *inter alia*, Miller and Harley Miller testify as to the length of Petitioner's hair, the PCRA court declined to hear the testimony and dismissed

---

[2]     See [ECF 35 at 2].

[3]     In these motions, Keller argued that: (1) photographs of Petitioner and DeMarco show that Petitioner did not have a ponytail, while DeMarco did; (2) Caudo had a conflict of interest because of his association with DeMarco, the alleged perpetrator of the crime; (3) Keller's investigator Wayne Schmidt stated in a January 22, 2008, report that he interviewed Ukubea on January 15, 2008 and Ukubea stated that Petitioner was not the assailant and that he blamed Petitioner for the assault because he believed Petitioner worked for the person who actually attacked him; (4) Caudo was ineffective because he failed to call Peter Miller ("Miller") as a witness, and included Miller's signed statement where Miller stated he was with DeMarco when DeMarco asked Petitioner over the phone to go to Ukubea's shop to pick up a check for him and that he was present when DeMarco learned that Petitioner had been arrested and told DeMarco that Petitioner had "got picked up for that beating I gave" Ukubea.

Petitioner's petition. An appeal followed and, thereafter, the Superior Court affirmed the dismissal.[4]

In his *habeas corpus* petition, Petitioner essentially asserts claims of actual innocence and ineffective assistance of counsel. Specifically, Petitioner contends that: (1) he is actually innocent of the offenses he was convicted of; (2) Keller was ineffective for failing to present evidence of his actual innocence on post-trial argument, on appeal, and during the PCRA proceedings; (3) Caudo and Keller were ineffective for failing to investigate, develop, and present exculpatory evidence; (4) Caudo was ineffective for failing to argue that Ukubea's description of events of March 30, 2005, was inaccurate, and that Keller was ineffective for failing to argue that Caudo was ineffective during the PCRA proceeding; (5) his due process rights were violated when the prosecutor committed misconduct, and that Caudo and Keller were ineffective in not arguing those instances of misconduct; and (6) the cumulative prejudicial effect of these errors entitles Petitioner to relief.

These claims were thoroughly analyzed and rejected by the Magistrate Judge in the R&R. Petitioner filed timely objections to the R&R and essentially argues that the Magistrate Judge misconstrued his actual innocence claim and erred in recommending the dismissal of the freestanding innocence claim; erroneously failed to grant an evidentiary hearing and dismissed the proffered evidence regarding Ukubea; erroneously found that Miller was unavailable to

---

[4] Petitioner was constitutionally entitled to counsel during his trial, after his conviction, and during his direct appeal, whereas he was not constitutionally entitled to counsel during his PCRA proceeding. As a result, this Court must view the effectiveness of his trial, post-conviction, and appellate counsel differently than that of his PCRA counsel. Because Keller served as counsel to Petitioner during post-conviction motion practice, during his direct appeal, and during his PCRA proceedings, it would be confusing to refer to Keller's ineffectiveness without providing additional context as to the stage in the proceeding being considered. For simplicity's sake, Keller will be referred to as "appellate counsel" when discussing his actions during motion practice after the conviction and sentencing and during the direct appellate process, and will be referred to as "PCRA counsel" when discussing his actions during the PCRA proceedings. Caudo will be referred to as "trial counsel."

testify at trial; erroneously dismissed evidence of Petitioner's hair length as cumulative; misconstrued Petitioner's character evidence; and improperly assessed his numerous claims of ineffectiveness of counsel. Though titled somewhat differently, this Court finds that many of the claims presented in the *habeas* petition which were addressed and rejected by the Magistrate Judge are identical to Petitioner's objections to the R&R. Petitioner's objections differ only in they these are offered as the errors committed by the Magistrate Judge when analyzing the *habeas* claims. Notwithstanding the rehashing of identical issues and arguments, Petitioner's objections will be addressed, *infra*.

**LEGAL STANDARD**

Where objections to an R&R are filed, the court must conduct a *de novo* review of the contested portions of the R&R, *see Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(C)), provided the objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). In making its *de novo* review, a court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. 28 U.S.C. § 636(b)(1). Although the review is *de novo*, the statute permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *United States v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749 F.2d at 7. Objections which merely rehash an argument presented to and considered by a magistrate judge are not entitled to *de novo* review. *Becker v. Tennis*, 2011 WL 2550544, at *1 n.3 (E.D. Pa. June 23, 2011) (declining to address contentions included in petitioner's objections, concluding that they are "nothing more than a restatement of the underlying claims contained in his petition") (citing *Morgan v. Astrue*, 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30, 2009)).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the standards for reviewing state court judgments in federal *habeas* petitions filed pursuant to 28 U.S.C. § 2254,[5] and requires that a petitioner first exhaust the remedies available in state court in order to seek federal *habeas* relief. *See* 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State . . ."). To meet this exhaustion requirement, a petitioner must "fairly present his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). If a state court has refused or would refuse to review a claim based on a state procedural rule that is independent of the federal question and adequate to support the judgment, the court may deny that claim as procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 729, 731-32 (1991); *Lark v. Sec't Pa. Dept. of Corrections*, 645 F.3d 596, 611 (3d Cir. 2011); *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). A federal court may consider the merits of a procedurally defaulted claim only if "the petitioner establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse the default." *Holloway v. Horn*, 355 F.3d 707, 715 n.3 (3d Cir. 2004) (quoting *Coleman*, 501 U.S. at 750).

To show "cause," the petitioner "must demonstrate some objective factor external to the defense that prevented compliance with the state's procedural requirements." *Id.*; *see also*

---

[5]     AEDPA restricted the circumstances under which a federal habeas court may grant relief to a state prisoner whose claim has already been "adjudicated on the merits in State court," *see* 28 U.S.C. § 2254(d), and increased the deference federal courts must give to the factual findings and legal determinations of the state courts. *Werts v. Vaughn*, 228 F.3d 178, 196 (3d Cir. 2000); *Dickerson v. Vaughn,* 90 F.3d 87, 90 (3d Cir. 1996). In accordance with § 2254(d), a *habeas corpus* petition may only be granted if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 376 (2000).

*Murray v. Carrier*, 477 U.S. 478, 488 (1986). Examples of suitable cause include: (1) a showing that the factual or legal basis for a claim was not reasonably available; or (2) a showing that some interference by state officials made compliance with the state procedural rule impracticable. *Coleman*, 501 U.S. at 753-54. To show "prejudice," a petitioner must show "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

To establish the fundamental miscarriage of justice exception, a petitioner must demonstrate his or her "actual innocence." *Calderon v. Thompson*, 523 U.S. 558, 559 (1998); *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A demonstration of actual innocence requires a petitioner to present new, reliable evidence of his or her innocence that was not presented at trial. *Schlup*, 513 U.S. at 324. The new evidence must be considered along with the entire record, including that which was excluded or unavailable at trial. *Id.* at 327-28. Once such evidence is presented, the petitioner's defaulted claims can only be reviewed if "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" in light of the new factual evidence. *Id.* at 327. The *Schlup* standard is "highly demanding and permits review only in the 'extraordinary case.'" *House v. Bell*, 547 U.S. 518, 538 (2006).

**DISCUSSION**

With these principles in mind, this Court will address Petitioner's objections and, where necessary, the underlying claims to which they refer.

*Ineffective Assistance of Trial and Appellate Counsel*[6]

Petitioner raises several ineffective assistance of trial and appellate counsel claims. When addressing the merits of ineffective assistance of counsel claims on *habeas* review, the court is to consider the "clearly established federal law" two-pronged inquiry articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Thus, to sustain an ineffectiveness assistance of counsel claim, a petitioner must show that counsel's performance was objectively deficient, and that this deficient performance prejudiced the defense. *Id.* at 687. To establish that counsel was deficient requires the petitioner to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* To show prejudice, the petitioner must make a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*; *see also Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992) ("[A] petitioner must demonstrate a reasonable probability that, but for the unprofessional errors, the result would have been different."). However, a court must defer to counsel's tactical decisions, avoiding "the distorting effects of hindsight," and give counsel the benefit of a strong presumption of reasonableness. *Strickland*, 466 U.S. at 689; *Gov't of the Virgin Islands v. Weatherwax*, 77 F.3d

---

[6]     To the extent that Petitioner asserts freestanding claims for ineffective assistance of PCRA counsel, such claims are not cognizable on *habeas* review, and, therefore, are denied. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *Marrero v. Lamas*, 2012 WL 2941528, at *1 (E.D. Pa. July 19, 2012) ("*Martinez* does not provide a freestanding basis for a petitioner to challenge the effectiveness of counsel in post-conviction proceedings to obtain habeas relief.").

1425, 1431 (3d Cir. 1996). Under the *Strickland* standard, "counsel cannot be held ineffective for failing to raise a claim that is without merit or futile." *Boston v. Mooney*, 2015 WL 6674530, at *12 (E.D. Pa. Jan. 9, 2015) (internal citations omitted).

Here, Petitioner concedes his ineffective assistance of counsel claims are all procedurally defaulted. [ECF 29 at 4-5]. Thus, to excuse the default, Petitioner must establish either "cause and prejudice" or a "fundamental miscarriage of justice". *See Holloway*, 355 F.3d at 715 n.3. To sustain his burden, Petitioner asserts that the cause for the procedural default of his ineffective assistance of trial and appellate counsel claims was PCRA counsel's failure to assert these claims during collateral review. Under certain circumstances, this argument can constitute cause to excuse a procedural default, as long as the petitioner can "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, one that has some merit." *See Martinez v. Ryan*, 566 U.S. 1, 14 (2012).[7]

The analysis of the prejudice prong of the cause and prejudice exception to procedural default, the *Martinez* requirement that the underlying ineffectiveness assistance claim be

---

[7]     In *Martinez*, the United States Supreme Court carved out a "narrow exception" to the well-established rule that alleged errors by post-conviction counsel cannot be the basis for showing "cause" to overcome a procedural default because there is no federal constitutional right to counsel on post-conviction review. *Martinez*, 566 U.S. at 9. The *Martinez* Court held that where state law requires that claims of ineffective assistance of trial counsel be raised for the first time in a collateral proceeding, a federal *habeas* petitioner may be able to establish "cause" sufficient to overcome a procedural default of a "substantial" claim of trial counsel's ineffectiveness if the collateral counsel was ineffective. *Id.* at 17. Thus, a petitioner "may establish cause for the procedural default of an ineffective assistance of counsel claim by demonstrating that his or her counsel in an 'initial-review collateral proceeding' provided ineffective assistance of counsel." *Jones v. Pa. Bd. of Prob. & Parole*, 492 F. App'x. 242, 244 (3d Cir. 2012) (citing *Martinez*). One such "initial-review collateral proceeding" is at the PCRA petition stage where appointed counsel provides constitutionally ineffective assistance in failing to assert a claim that should have been raised. *See Martinez,* 566 U.S. at 14 (citing *Strickland*, 466 U.S. 668). Pennsylvania does not allow ineffective assistance of counsel claims to be asserted on direct appeal. *Commw. v. Grant*, 813 A.2d 726, 738 (2002) ("We now hold that, as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review."); *see also Torres-Rivera v. Bickell*, 2014 WL 5843616, at *16 (E.D. Pa. Nov. 10, 2014) (citing *Grant*). For this reason, Petitioner seeks to rely on *Martinez* to establish cause to excuse the procedural default of his ineffective assistance of trial and appellate counsel claims.

"substantial," and the *Strickland* prejudice requirement, each entail a similar showing; *to wit*: that the underlying ineffective assistance claim be meritorious. Thus, to the extent the underlying ineffective assistance of counsel claim cannot satisfy the *Strickland* requirements, prejudice does not exist to excuse the procedural default of such a claim. In analyzing a *Strickland* claim, courts "may consider the *Strickland* prongs in either order [and] that it is often practical to consider the prejudice prong first." *United States v. Fazio*, 795 F.3d 421, 426 (3d Cir. 2015) (citing *United States v. Booth,* 432 F.3d 542, 546 (3d Cir. 2005)). Here, the Magistrate Judge ultimately concluded that none of Petitioner's underlying ineffective assistance claims had merit and, thus, he could not establish prejudice under *Strickland* nor show, as a result, prejudice to overcome the procedural default of these claims. Petitioner disagreed and raised certain objections to the reasoning underpinning the Magistrate Judge's conclusions. Each of these objections is addressed below.

In Claim III of his petition, Petitioner asserts an ineffective assistance of counsel claim premised upon various failures by both trial counsel and appellate counsel to present exculpatory evidence. Initially, the claim centers on the failure of both trial and appellate counsel to present the testimony of Miller, a member of the Hells Angels club who knew both Petitioner and DeMarco, and who may have provided evidence regarding the length of Petitioner's hair, and DeMarco's admission to Miller that it was he (DeMarco) and not Petitioner, who assaulted Ukubea. The Magistrate Judge rejected the claim, *in part*, because at the PCRA hearing Petitioner failed to present an affidavit stating that Miller was available and prepared to testify on Petitioner's behalf.[8] [ECF 35 at 19]. Petitioner objects to this finding and argues that Miller did

---

[8] Under Pennsylvania law, in order for a petitioner to establish that counsel was ineffective for failing to present witnesses, the petitioner must show that: "1) the witnesses existed; 2) the witnesses were available; 3) that counsel was informed of the existence of the witnesses or should have known of the

submit an affidavit stating that he would have been willing to testify at Petitioner's trial and, therefore, Petitioner's claim has merit. [ECF 36 at 6]. Petitioner is, however, mistaken.

Miller's affidavit, which indicates a willingness to testify on Petitioner's behalf, was signed on November 21, 2014, and submitted for the first time in this *habeas* proceeding. [ECF 19-24]. In contrast, during the PCRA proceeding, Petitioner submitted a signed statement, not an affidavit, from Miller dated April 23, 2009, in which Miller indicated he was present when DeMarco asked Petitioner to pick up a payment from Ukubea and was with DeMarco when they learned that Petitioner was arrested, at which point DeMarco stated that Petitioner had got "picked up for that beating I gave [Ukubea]." (*Id.* at 2). Contrary to Petitioner's contention, this 2009 statement did not declare a willingness or availability to testify at trial. (*Id.* at 2-3). When presented with the statement, the Pennsylvania Superior Court on the PCRA appeal, applying Pennsylvania law, concluded that the signed statement was insufficient to establish that Miller was available and willing to testify at trial and, therefore, counsel was not ineffective for failing to call and interview a witness who may not have been available and willing to testify. *Commw. v. Petty*, 2013 WL 11250803, at *7 (Pa. Super. Ct. Nov. 6, 2013). The standard is the same under federal habeas review. *See Brisbon v. Sobina*, 2009 WL 7248072, at *11 (E.D. Pa. July 17, 2009) ("Where a petitioner contends that trial counsel was ineffective for failing to locate or present witnesses, he must show that the witnesses would have been available to testify at the time of trial . . . .") (citing *Zettlemoyer v. Fulcomer,* 923 F.2d 284, 298 (3d Cir. 1991). Therefore, Petitioner has not shown that Miller, during trial, on the direct appeal, and/or during the PCRA proceeding, would have been willing to testify on Petitioner's behalf, PCRA counsel,

---

witnesses' existence; 4) that the witnesses were available and prepared to cooperate and would have testified on [the petitioner's] behalf; and 5) the absence of the testimony prejudiced the [petitioner]." *Commw. v. Crawley*, 663 A.2d 676, 679–80 (Pa. 1995).

appellate counsel and trial counsel cannot be deemed ineffective for failing to interview and/or call Miller as a witness. *See id.* Further, because it is not clear if Miller was willing to testify on Petitioner's behalf during trial, Petitioner has not established that the outcome of his trial would have been different had counsel sought to interview Miller or called him to testify. *See Frey*, 974 F.2d at 358. Thus, since the underlying ineffectiveness assistance of trial and appellate counsel claims lack merit, PCRA counsel cannot be ineffective in failing to raise such claim. *See Boston*, 2015 WL 6674530, at *12. Therefore, Petitioner's objection is overruled, and the claim is denied as procedurally defaulted.[9]

In Claim III Petitioner also asserts that trial counsel was ineffective for failing to present other evidence showing that Petitioner did not have a ponytail in March 2005. Petitioner contends this other evidence included, *inter alia,* Petitioner's booking photo[10] and arrest report which showed that Petitioner's hair on the day of his arrest was "above ears", [ECF 19-9 at 2], and the testimony of several work associates who may have testified that Petitioner always had short hair. The Magistrate Judge concluded that the additional evidence would have been

---

[9] There exists a second, independent grounds to support the finding of procedural default of this claim. During the PCRA hearing, Petitioner testified that after he was arrested he stayed in the Hells Angels for "a little while" and agreed that "ratting out" other members was not a good way to be promoted in the organization. [PCRA. Tr. at 71 [ECF 19-7]]. Petitioner also testified that he agreed with trial counsel's decision to not present "DeMarco or anyone else." (*Id.* at 67). In light of this testimony, the Magistrate Judge correctly concluded that trial counsel was not ineffective for following his client's instructions not to blame the crimes on another member of the Hells Angels, and, therefore, PCRA counsel was not ineffective for failing to raise this meritless claim. [ECF 35 at 20]; *see also United States v. Khosnevissan*, 1989 WL 69528, at *11 (E.D. Pa. June 19, 1989) ("A counsel's actions will not be found unreasonable if they result from strategies insisted upon by the defendant."); *Comm. v. Chmiel*, 889 A.2d 501, 546 (Pa. 2005) (counsel not ineffective for acting in conformity with client's wishes to not have an investigator obtain a witness to testify). Petitioner did not object to this conclusion, and it is adopted by this Court.

[10] The booking photograph was provided to trial counsel at trial, and only showed Petitioner from the front. [ECF 20-1 at 32-33].

cumulative of the evidence offered at trial on the issue of the length of his hair[11] and, therefore, trial counsel could not be found ineffective for failing to present cumulative evidence. Petitioner objects to the Magistrate Judge's conclusion, disagrees that the evidence and witnesses were cumulative, and argues that the evidence offered demonstrates that trial counsel used the wrong evidence because the proffered evidence was stronger to support his claim that he did not have a ponytail.

As noted, Petitioner's trial counsel offered the testimony of Kathy McGinn, Petitioner's girlfriend, cross-examined the arresting police officers, and argued during his closing to the jury that Petitioner did not have a ponytail in March 2005. Further, in support of his mistaken identity defense, Petitioner relied on McGinn's alibi testimony, and on the testimony of his co-defendant who testified that DeMarco, and not Petitioner, was the person who assaulted Ukubea.[12] As a general rule, "a failure to present cumulative evidence does not render counsel's performance ineffective under *Strickland.*" *Danner v. Cameron*, 564 F. App'x 681, 685 (3d Cir. 2014). Here, the additional evidence would have done little more than to corroborate McGinn's testimony and the cross-examination of the arresting police officers. Notably, the arrest

---

[11]    At trial, counsel presented a mistaken identity defense based, *inter alia*, on evidence that Petitioner did not have a ponytail in March 2005, whereas Ukubea described his assailant as having one. Trial counsel called Kathy McGinn ("McGinn"), Petitioner's girlfriend, to testify that Petitioner had always had short hair during the eleven years she had known him. Trial counsel also presented her with enlarged photos of Petitioner taken when he was arrested and she testified that he did not have a ponytail in those photographs. Trial counsel cross-examined an arresting officer using one of the photographs, who ultimately disagreed and testified that the photo showed a small ponytail, tucked into the back. Trial counsel then cross-examined the officer who filled out the biographical information report on why the report failed to indicate a ponytail, which would have been a distinguishing feature. Finally, during closing argument, trial counsel recounted the evidence to support that Ukubea had misidentified Petitioner on March 30, 2005.

[12]    "It is firmly established that it is the 'the jury's prerogative to decide all questions of credibility,'" *see United States v. Haut*, 107 F.3d 213, 220 (3d Cir. 1997), and, obviously, the jury found McGinn's testimony and the testimony of Petitioner's co-defendant to not be credible.

photographs were shown to the jury during the examination of the arresting police officers and, thus, reintroducing these photographs would have been cumulative and of minimal impact in favor of Petitioner.[13]  In all likelihood, the trial court would have deemed any additional hair length evidence cumulative in nature.  Thus, Petitioner has failed to satisfy his burden to show that, but for the failure to introduce this additional evidence, the result of his trial would have been different.  Petitioner cannot show that trial counsel was ineffective for failing to present this additional, cumulative evidence.  Therefore, PCRA counsel cannot be deemed ineffective for failing to assert the underlying ineffective assistance of trial counsel claim.  Petitioner's objection is overruled, and this claim is denied as procedurally defaulted.[14]

In Claim III, Petitioner further asserts that trial counsel was ineffective for failing to investigate, develop, and present compelling character evidence at trial.  [ECF 20-1 at 42-45]. At trial, counsel stipulated that if called to testify, Kathy Meyers, Ellen Thorne, Tom Dooley, Cecil Preston, Robert Heenan, and Timothy Nagy would all testify that Petitioner had a reputation in the community for being law-abiding and peaceful.  (*Id.* at 42).  Petitioner argues that had trial counsel properly investigated and developed these character witnesses, he would have been able to present witnesses at trial who could have provided significant detail about their

---

[13]    Indeed, during PCRA review, the PCRA Court excluded the testimony of Harley Miller, who knew Petitioner for several years before March 2005 and who would have testified about Petitioner's hair length, as cumulative of evidence presented at trial.  [ECF 19-18 at 1].

[14]    Petitioner also objects to the Magistrate Judge's reliance on *Brown v. Wenerowicz*, 663 F.3d 619, 630 (3d Cir. 2011), which the Magistrate Judge quoted as stating "Counsel [cannot] be deemed ineffective for failing to call witnesses whose testimony would be cumulative."  [ECF 35 at 21]. Petitioner notes that *Brown* does not contain this sentence, and further argues that *Brown* is inapposite. [ECF 36 at 7-8].  Petitioner is correct that the quoted sentence does not appear in *Brown v. Wenerowicz*; it appears instead in *Brown v. Wakefield*, the district court case which was appealed as *Brown v. Wenerowicz*.  Despite this inadvertent citation, the Magistrate Judge was correct that counsel will generally not be deemed ineffective for failing to present cumulative witnesses or evidence.  *See Danner*, 564 F. App'x at 685.  Thus, the Magistrate Judge's incorrect citation is harmless, and Petitioner's objection is overruled.

association with Petitioner and his reputation for being peaceful and law-abiding. (*Id.* at 43). The Magistrate Judge construed this claim as an ineffective assistance of counsel claim based on trial counsel's decision to introduce character evidence by stipulation, as opposed to live testimony, and concluded that this submission constituted a strategic decision and did not demonstrate trial counsel ineffectiveness. [ECF 35 at 24-25]. Petitioner objects and argues that the Magistrate Judge misconstrued this claim, which is not premised on the character evidence being introduced by stipulation, but instead on the failure of trial counsel to properly investigate and develop the character evidence.[15] Though Petitioner asserted this argument in his *habeas* petition, the Magistrate Judge apparently and inadvertently did not address it. Therefore, this Court will consider the claim.[16]

Pennsylvania Rule of Evidence 404(a)(2)(A) allows a criminal defendant to offer character evidence of the defendant's pertinent character trait. A character trait is "pertinent" if

---

[15] In his petition, Petitioner asserted that trial counsel "had no reasonable basis for failing to present live character testimony at trial—particularly where Pennsylvania law provides that character evidence alone can create the reasonable doubt sufficient for an acquittal." [ECF 20-1 at 44]. Petitioner also argued that:

> [E]ntering into a brief stipulation devoid of any detail of [Petitioner's] years of volunteerism and other actions as a peaceful and law-abiding citizen, [trial counsel] missed his opportunity to present [Petitioner's] good character to the jury. There is a reasonable probability that a full presentation of character testimony . . . would have changed the outcome of Petitioner's trial.

[ECF 20-1 at 45]. Thus, it is understandable that the Magistrate Judge construed Petitioner's argument to be that the character evidence should have been introduced via live testimony instead of stipulation.

[16] Petitioner further objected to the Magistrate Judge's finding that trial counsel had a strategic reason to avoid live testimony in that he wanted to avoid any potential for cross-examination that would lead the jury learning that Petitioner was connected to the Hells Angels and DeMarco. [ECF 36 at 9]. Because Petitioner asserts that his underlying claim is only that trial counsel failed to properly investigate and develop the character witnesses, and is not premised on the character evidence being introduced by stipulation instead of live testimony, trial counsel's purported strategy for introducing the evidence by stipulation is not relevant to the actual claim. For this reason, this objection is overruled.

it is "relevant to the crime charged against the accused." *Comm. v. Minich*, 4 A.3d 1063, 1071 (Pa. 2010). Here, trial counsel identified six individuals who the Government stipulated would all testify that Petitioner had a reputation in the community for being law-abiding and peaceful. [November 8, 2006 Trial Tr. at 8 [19-3]]. The trial judge instructed the jury to accept the stipulation as if testimony presented by live witnesses. (*Id.* at 7). Petitioner, however, argues in his petition that of these six, two would not have been able to testify as to Petitioner's peaceful, law-abiding nature but, instead, would have testified about Petitioner's volunteerism. [ECF 20-1 at 43].[17] As to Cecil Preston, Petitioner contends that he would have testified, in addition to Petitioner's reputation for being peaceful and law-abiding in the workplace, that Petitioner was also a good worker and a family man. (*Id.* at 43-4). Todd Heron would have testified as to Petitioner's peaceful nature, and Tom Dooley would have testified about Petitioner's volunteerism and his reputation in the workplace of being peaceful and law-abiding. (*Id.* at 4).

In his petition, Petitioner is not asserting that the presentation of the character testimony via stipulation constituted ineffective assistance of counsel. Petitioner's sole argument seems to be that trial counsel was ineffective because had he properly investigated these character witnesses, he could have included in the stipulation that Petitioner was a good worker and family man who volunteered. While that may have been the additional testimony of these witnesses, none of these additional character traits are pertinent to the crimes for which Petitioner was charged and convicted.[18] Therefore, this additional character evidence would not have been

---

[17]      Specifically, Robert Heenan and Timothy Nagy both stated that they "would not have been able to give an opinion as to his reputation in the community for being a peaceful, law abiding citizen."

[18]      Petitioner has also failed to convincingly argue that had the jury heard this additional character evidence, the results of the trial would have been different. *See Frey*, 974 F.2d at 358 ("[A] petitioner must demonstrate a reasonable probability that, but for the unprofessional errors, the result would have been different.").

admissible.  As such, Petitioner cannot show that he was prejudiced by trial counsel's stipulation or that trial counsel's failure could be deemed deficit.[19]  As a result, PCRA counsel was likewise not ineffective for failing to raise this claim.  Petitioner's objection is overruled, and this claim is denied as procedurally defaulted.

In Claim IV, Petitioner asserts that trial counsel was ineffective for failing to argue  in his closing that Ukubea's description of the March 30, 2005 incident contradicted other witnesses' testimony on: (1) when exactly Ukubea summoned the police and (2) the temperament of Petitioner's dog and whether Petitioner used the dog to threaten Ukubea.  [ECF 20-1 at 46-48].[20] The Magistrate Judge noted that trial counsel's strategy was to allow Petitioner's co-defendant's counsel to attack Ukubea's credibility with inconsistencies while trial counsel focused on the specific evidence which supported his mistaken identity defense.  [ECF 35 at 27].  The Magistrate Judge concluded that this trial strategy was not unreasonable and, therefore, Petitioner could not demonstrate that trial counsel was ineffective during the closing argument.  (*Id.*). Petitioner objects to this conclusion and argues that the Magistrate Judge erred in attributing a strategy to trial counsel without granting an evidentiary hearing to support such a finding.  [ECF 36 at 10].  Petitioner also argues that co-defendant's counsel did not focus on the inconsistencies

---

[19]    This Court notes that Petitioner may have benefited from trial counsel's failure to fully investigate these witnesses as two of the six witnesses he stated would attest to Petitioner's peaceful and law-abiding nature would not in truth have done so.

[20]    Specifically, Petitioner argues that the police officers' testimony shows that, despite Ukubea's contention to the contrary, Ukubea had called the police prior to Petitioner's arrival when Ukubea learned that someone was coming to collect money from him, and that the police were already across the street, ready to respond, and that there simply wasn't sufficient time between Petitioner's arrival and the police response, for Petitioner to threaten Ukubea with the dog, for four or five people to call the police, and for Ukubea to flee the premises in search of the police.  [ECF 20-1 at 46].  In addition, the police did not testify that the dog was vicious or threatening, and McGinn testified that the dog was sick and weak, and not vicious at all.  Petitioner argues that trial counsel should have argued that Petitioner could not have threatened Ukubea in the time allotted and that he brought the dog because it was sick and not with the intent of threatening Ukubea.  (*Id.* at 47-48).

in Ukubea's testimony about the March 30, 2005 incident, and his trial counsel's performance was deficient for failing to do so himself. (*Id.*). Petitioner is mistaken.

The "right to effective assistance extends to closing arguments." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). However, "counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." *Id.* at 5-6. "Judicial review of a defense attorney's summation is therefore highly deferential and doubly deferential when it is conducted through the lens of federal *habeas*." *Id.* "[A] closing argument is usually given in a manner consistent with the theory of the case; a summation cannot therefore be deficient in a manner sufficient to support a claim of ineffective assistance of counsel unless the theory and method of implementing the theory were unreasonable under the circumstances." *United States v. Ciancaglini*, 945 F. Supp. 813, 825 (E.D. Pa. 1996).

Here, trial counsel's defense theory was that Petitioner was mistakenly identified as the March 14, 2005 assailant, and counsel's strategy to exonerate Petitioner was to convince the jury of this defense. [September 18, 2012 PCRA Hearing Tr. at 35-36, 38 [ECF 19-7]]. Consistent with this strategy, trial counsel argued to the jury during his closing certain evidence consisting, *inter alia,* of the following: that Petitioner's co-defendant identified another person as the assailant, the discrepancy between the description of the assailant and Petitioner, including his hair length, the evidence that Petitioner did not have a ponytail and was at home in bed at the time of the crime, and that Petitioner had been treated for a tooth abscess on the day of the crime and was, therefore, medicated and home recovering. [November 8, 2006 Trial Tr. at 215-40]. That trial counsel chose to focus his closing argument on the evidence that supported the mistaken identity defense theory and not on the noted inconsistencies in Ukubea's testimony

regarding the events surrounding Petitioner's arrest is not an unreasonable strategy. Moreover, the inconsistencies noted were not completely ignored. Trial counsel argued during the closing that:

> Mr. Ukubea's testimony. I won't cover the same ground as [co-defendant's counsel] covered because I think he covered it pretty well. And there is an abundance of versions and inconsistencies and lack of credibility in Mr. Ukubea's various versions, his testimony at two different preliminary hearings, his statement to the police, and his testimony during the course of this trial. All over the place.

(*Id.* at 222). Under the circumstances, Petitioner cannot establish that trial counsel was deficient in his closing argument. Consequently, PCRA counsel was likewise not ineffective for failing to raise this claim. Thus, Petitioner's objection lacks merit and is overruled. This claim is denied as procedurally defaulted.

### Due Process

In Claim V, Petitioner argues that his due process rights were violated when the prosecutor referred to Petitioner and his co-defendant as "enforcers" in the prosecutor's opening statement and as "two mobsters, two enforcers" in the closing argument, and repeatedly stated that Petitioner and his co-defendant had attempted to "extort" money from Ukubea on March 4, 2005. [ECF 20-1 at 48-49]. The Magistrate Judge concluded that the prosecutor's pejorative reference to Petitioner as a mobster and enforcer did not affect the jury's ability to judge the evidence fairly, especially in light of the trial court's instructions to disregard those statements[21]

---

[21]    After the prosecutor referred to Petitioner and his co-defendant as "two mobsters, two enforcers," trial counsel objected, the trial court sustained the objection, and the prosecutor reworded her statement to "two people." [November 8, 2006 Trial Tr. at 244 [ECF 19-3]]. In addition, after closing arguments, the trial court instructed the jury as follows:

> [T]he [prosecutor] used the term "extortion" a number of times. This case is not about "extortion." Please ignore the term extortion. I will tell you what the crimes are that are being charged and I will define them for you.

and the lack of evidence that Petitioner was a mobster or an enforcer. [ECF 35 at 29]. The Magistrate Judge also concluded that the prosecutor's references to extortion were not improper in light of Ukubea's testimony that Petitioner demanded money from Ukubea that he did not owe, then assaulted and threatened to kill him and burn his business. Further, the trial court also instructed the jury that Petitioner was not charged with extortion. (*Id.* at 30).

Petitioner objects to this conclusion and argues that the Magistrate Judge erred in finding that the reference to mobsters and enforcers were harmless comments and erred in failing to consider the full impact of these statements combined with the prosecutor's other wrongful comments, including, the extortion comments when measured in the context of the entire trial, the inadequate cautionary instructions to the jury, and the "weak evidence" of Petitioner's guilt. (*Id.*). Petitioner's objections are, however, without merit.

Generally, "[i]nappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *United States v. Young*, 470 U.S. 1, 11 (1985). A reviewing court "must consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly." *Id.* at 12. It is "not enough that the prosecutor's comments were inadvisable or even objectionable." *Fahy v. Horn*, 516 F.3d 169, 202 (3d Cir. 2008). "Rather, the appropriate standard of review for such a habeas claim is 'the narrow one of due process' to determine

---

. . .

> [T]here were some objections lodged that related to the [prosecutor] using the term mobsters when referring to the defendants in the case, and I must advise you that that's an improper reference, and that there is no support for that in the record for that characterization, and it must be ignored by you when arriving at your verdict . . . . because you are to consider only the evidence as presented in this court in arriving at your verdict.

(*Id.* at 275-76, 286-87).

whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 642–43 (1974)). Here, even globally considering all of the prosecutor's comments, Petitioner cannot establish that these comments denied him due process or so infected the trial and jury with unfairness. *See id.* This is especially true when considering the trial judge's instructions to the jury to disregard those comments. *See United States v. Shaw*, 476 F. App'x 970, 973 (3d Cir. 2012) ("It is well-settled that 'juries are presumed to follow their instructions.'") (quoting *Zafiro v. United States,* 506 U.S. 534, 540, (1993)). The totality of the evidence supports the verdict rendered. For these reasons, Petitioner's objections are overruled and this claim is denied.[22]

### Actual Innocence

Petitioner raises several claims premised on alleged evidence of his actual innocence. In Claim I, Petitioner asserts that he is actually innocent and that this proclamation: (1) constitutes a freestanding basis for *habeas* relief in and of itself, and (2) provides a gateway through which

---

[22] On direct appeal, appellate counsel argued that the prosecutor's remarks seriously threatened the jury's objectivity and deprived Petitioner of a fair trial, relying solely on state law cases. [ECF 19-12 at 10-11]. It is unclear whether appellate counsel meant to raise a federal Due Process claim or only a state law claim. The Superior Court, in denying relief, concluded that the statements were "not so inflammatory as to cause the jury to form a fixed bias or hostility toward [Petitioner] and prevent it from properly weighing the evidence and rendering a fair and impartial verdict." [May 2, 2011 Superior Court Opinion [ECF 19-17 at 9]]. The Superior Court relied on the state standard of review for claims of prosecutorial misconduct. The Magistrate Judge noted that the Superior Court's decision was entitled to deference under AEDPA, and Petitioner objects to this conclusion, arguing that appellate counsel did not raise a federal Due Process claim and, thus, there was no state decision on a federal Due Process claim on which to defer.

Assuming, *arguendo* that the state standard for prosecutorial misconduct claims is distinct from a federal Due Process claim based on prosecutorial misconduct, Petitioner's objection is still without merit, as this Court has already concluded, without deferring to the state court decision that no Due Process violation occurred. For this reason, Petitioner's objection is overruled. Likewise, Petitioner's ineffective assistance of counsel claim based on appellate counsel's failure to assert a federal Due Process claim is meritless because the underlying claim is meritless, and PCRA counsel was likewise not ineffective for failing to raise it. Petitioner's ineffective assistance of counsel claims related to the alleged Due Process violation are denied.

this Court may consider his otherwise procedurally defaulted claims. In Claim II, Petitioner argues that appellate counsel and PCRA counsel were ineffective for failing to properly present evidence of his actual innocence during the state proceedings.

As previously noted, a demonstration of actual innocence requires a petitioner to present new, reliable evidence of his or her innocence that was not presented at trial. *Schlup*, 513 U.S. at 324. The new evidence must be considered along with the entire record, including that which was excluded or unavailable at trial. *Id.* at 327-28. Here, Petitioner's alleged new evidence is Ukubea's purported recantation of his testimony in which he identified Petitioner as the assailant. This new evidence was obtained when Keller hired an investigator, Wayne Schmidt ("Schmidt"), to interview Ukubea. [ECF 20-1 at 7]. According to Schmidt, he interviewed Ukubea on January 15, 2008, and Ukubea informed him that Petitioner was not the person who assaulted him but was the person who came to his shop the second time; and that Ukubea, however, blamed Petitioner for the assault because he believed Petitioner worked for the person who actually attacked him. [Schmidt Aff. ¶ 3 [ECF 19-32]]. Petitioner argues that this evidence is sufficient to establish "actual innocence" under *Schlup* and, therefore (1) he has a meritorious actual innocence claim and, (2) his appellate counsel was ineffective for failing to present this new evidence to the state court. [ECF 20-1 at 15-17].[23] Petitioner is mistaken.

In analyzing Claim I, the Magistrate Judge first concluded that there exists no freestanding actual innocence claim such that a *habeas* petitioner would be entitled to *habeas* relief solely on the basis of his actual innocence, in the absence of an underlying constitutional violation. [ECF 35 at 13-14]. Petitioner asserts a conclusory objection to this conclusion. [ECF

---

[23] Petitioner notes that appellate counsel improperly raised this new evidence as an ineffective assistance of trial counsel claim, even though such claims can only be considered during PCRA proceedings. [ECF 20-1 at 7].

36 at 4]. A review of the relevant authority makes clear that Petitioner's objection has no merit because a claim of actual innocence, even if proven, does not establish a freestanding right to *habeas* relief.

In *Schlup*, the Supreme Court held that a successful claim of actual innocence serves as a "gateway" through which a petitioner can seek federal habeas review of otherwise procedurally defaulted claims, so long as "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" in light of the new factual evidence. *Schlup*, 513 U.S. at 324, 327. However, while an actual innocence claim may provide such a gateway to allow a district court to consider otherwise procedurally defaulted constitutional claims, neither the Supreme Court nor the Third Circuit has ever held that a freestanding actual innocence claim is cognizable on *habeas* review. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); *Sistrunk v. Rozum*, 674 F.3d 181, 187 (3d Cir. 2012). Further, in *Herrera v. Collins*, the Supreme Court addressed whether a freestanding claim of actual innocence was cognizable on federal *habeas* review, noting that federal courts are not meant to be forums in which to relegate state trials and that "[f]ew rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence." *Herrera v. Collins*, 506 U.S. 390, 401 (1993). This Court finds that the Magistrate Judge's analysis of this claim was well-reasoned and legally sufficient. Since Petitioner's objections on this issue lack legal support, the objections are overruled, and his freestanding actual innocence claim is dismissed.

Regarding Petitioner's gateway actual innocence claim, because Petitioner's underlying ineffective assistance of counsel and due process claims are without merit, there is no reason to

consider the gateway actual innocence claim. Notwithstanding, the Magistrate Judge considered this actual innocence claim and concluded that Schmidt's affidavit attesting that Ukubea had recanted his testimony was not reliable evidence and, therefore, Petitioner has not established his "actual innocence." [ECF 35 at 15]. Although Petitioner agrees that Schmidt's affidavit, without more, cannot satisfy *Schlup*, he argues that the underlying recantation evidence is reliable and, therefore, the Magistrate Judge should have held an evidentiary hearing to consider Ukubea's testimony.

"Courts have historically viewed recantation testimony with great suspicion." *United States v. Jackson*, 427 F. App'x 109, 112 (3d Cir. 2011). This Court does as well. Here, Petitioner has not provided direct evidence of recantation in the form of an affidavit or signed statement *by* Ukubea, nor can he. Petitioner acknowledges that he cannot provide such an affidavit because Ukubea refused to answer questions posed by the investigator. [ECF 29 at 4 n.2]. In the absence of an affidavit or other direct evidence, Schmidt's averments of recantation are hearsay evidence and unreliable, especially in light of Ukubea's sworn trial testimony that Petitioner was the assailant. Further, Petitioner cites to no authority that required a magistrate judge to hold the requested evidentiary hearing. Even if such a requirement existed, it is not at all certain Ukubea would be willing and available to testify on Petitioner's behalf considering he was unwilling to provide an affidavit to support the alleged recantation. Under these circumstances, Petitioner has failed to meet the "highly demanding" burden of establishing actual innocence under *Schlup*, which would permit the review of otherwise procedurally defaulted claims in an "extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006). Petitioner's objections are overruled and his claim of actual innocence is denied.

Likewise, Petitioner's argument in Claim II that his appellate counsel was ineffective for failing to present the recantation evidence to the state court lacks merit.[24] Although Petitioner objects to the Magistrate Judge's rejection of this claim while acknowledging that Schmidt's affidavit would not have been admissible in state court as affirmative evidence of innocence, Petitioner contends that appellate counsel should have used Schmidt's affidavit as a basis for an evidentiary hearing at which Ukubea could have been subpoenaed to testify. [ECF 36 at 4-5]. However, as noted *supra*, even if appellate counsel had requested an evidentiary hearing, and had the state court granted such a request, it is by no means certain that Ukubea, who was unwilling to provide an affidavit attesting to his recantation, would have been willing or available to testify at the hearing. Assuming the recantation to be true, Ukubea's recanted testimony would require that he admit that he lied under oath, therefore exposing himself to possible criminal charges. This scenario is suspect in light of Petitioner's inability to get Ukubea to sign an affidavit or a signed statement indicating his retraction. Petitioner, thus, cannot show that but for appellate counsel's failure to request an evidentiary hearing the results of his appeals process would have been different. *See Frey*, 974 F.2d at 358. Since Petitioner cannot establish prejudice from appellate counsel's actions or inactions, his objections are overruled, and his ineffective assistance of counsel claim concerning his purported evidence of actual innocence is denied.

*Cumulative Prejudice*

In Claim VI, Petitioner argues that he is entitled to relief because of the cumulative prejudicial effect of all of the errors in his case. The Magistrate Judge concluded that because

---

[24]     To the extent that Petitioner asserts that PCRA counsel was ineffective for failing to introduce this evidence during PCRA review, such claims are not cognizable on *habeas* review, and, therefore, are denied. *See* 28 U.S.C. § 2254(i).

there were no constitutional errors committed in the underlying proceedings, the cumulative error claim fails. [ECF 35 at 30 n.5]. Petitioner objects to this conclusion and argues that the Magistrate Judge was wrong to reject his other claims and, therefore, erred when rejecting this argument. [ECF 36 at 12]. Because this Court has carefully analyzed Petitioner's objections and concluded that none of Petitioner's claims or objections have merit, Petitioner's cumulative prejudice claim lacks merit, and is denied.

**CONCLUSION**

For the reasons stated herein, Petitioner's objections to the Report and Recommendation are overruled. Consequently, the Report and Recommendation is approved and adopted, and Petitioner's petition for a writ of *habeas corpus* is denied. Since reasonable jurists would not debate the disposition of Petitioner's claims, a certificate of appealability is denied. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.